UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 16-21585-A-11 |
| | ) | |
| AIAD SAMUEL and HODA SAMUEL, | ) | Docket Control No.: None |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM**

This Memorandum addresses two separate motions, one by debtor Aiad Samuel ("Mr. Samuel") and the other by debtor Hoda Samuel ("Mrs. Samuel"). Dockets 1121 & 1122; see also Docket 1123 (pleading identical to Docket 1122). Both motions demand that Judge McManus recuse himself and that their case be reassigned to another judge. These motions are based on the assertion that Judge McManus has a conflict of interest and has a "clear prejudice" against the debtors as well as Mr. Samuel's attorney, Richard Jare. Docket 1123 at 1.

///

///

I

Specifically, the debtors assert:

(1) the court has been "favoring of the Trustee and other individuals with clear conflicts of interest;" the court has condoned the illegal taking of their assets; the court has improperly approved sales of their properties; the court allowed the trustee to sell their assets for pennies on the dollar, without proper appraisals, and "under highly suspicious criminal circumstances;"

(2) Judge McManus' former law firm and "the parties" have professional and business connections to the buyers of the properties that were sold;

(3) the court has conspired against the debtors, cooperating in the enforcement of an illegal, invalid, and unenforceable garnishment order of the magistrate court; the court has violated "the terms of judgment that [Mrs. Samuel] is contesting;" the court has violated the "terms of compromise agreements;"

(4) the court has not investigated the FDIC's claim of over three million dollars;

(5) the court did not dismiss Mrs. Samuel from the case even though she did not sign the petition or the schedules and did no credit counseling;

(6) the court has not allowed Mrs. Samuel to participate in matters before the court; the court has denied Mrs. Samuel representation at hearings, despite her requests for legal counsel;

(7) the court has violated their civil rights and due process by:

(a) depriving them of the opportunity to amend their
schedules;

(b) denying Mr. Samuel "fair and impartial hearing[s]" on
the trustee's failures of management of the properties and
his failure to undo the $200,000 garnishment by the United
States from the debtors;

(c) the court has ignored or refused to consider court
filings, including the objections of Mrs. Samuel to the
court's jurisdiction over her;

(d) the court has ignored that Mrs. Samuel "is never
included on any notices or mailings from this court or any
of the attorneys for the Trustee," violating her due
process; Mrs. Samuel was "kept in dim darkness of all
decisions, orders, negotiations or offers;"

(e) Mrs. Samuel "was not timely noticed of the upcoming
hearing in August" on the confirmation of a plan filed by
the chapter 11 trustee.

Dockets 1121, 1122, 1123.

II

The debtors filed this chapter 11 case on March 15, 2016.
After a motion by a creditor secured by one of the debtors'
commercial properties, on May 3, 2016 the court appointed a
chapter 11 trustee to administer an estate that consisted
primarily of four shopping centers and six residential
properties.

During the course of the case, the trustee and his
professionals spent considerable time and resources dealing with

1  the debtors' obstruction and lack of cooperation.

2      For example, the debtors filed repeated motions to dismiss

3  the case and to remove the trustee.  These motions were

4  unsupported by evidence (or admissible evidence), not noticed for

5  hearing, and without proof that they were ever served on anyone.

6  While Mrs. Samuel has been in federal prison throughout the case,

7  Mr. Samuel has refused to cooperate with the trustee.  He has

8  refused to provide the trustee, the creditors, and the court with

9  information about their assets, their liabilities, and the

10 identity of all their creditors.

11     The trustee eventually marketed and sold all of the debtors'

12 shopping centers.  The court approved the sale of three of the

13 shopping centers in January 2017.  The sale of the last shopping

14 center was approved in January 2018.  The debtors appealed the

15 orders approving the sales.  The debtors did not prevail on any

16 of their appeals.  All sale orders are now final, the sales have

17 been consummated and the trustee is in the process of confirming

18 a chapter 11 plan.  The residential properties have been either

19 abandoned or will be disposed of through the plan.

20

21                              III

22     Fed. R. Bankr. P. 5004(a) provides that "*[a] bankruptcy*

23 *judge shall be governed by 28 U.S.C. § 455, and disqualified from*

24 *presiding over the proceeding or contested matter in which the*

25 *disqualifying circumstances arises or, if appropriate, shall be*

26 *disqualified from presiding over the case.*"

27     Rule 5004(a) thus makes 28 U.S.C. § 455 applicable to

28 bankruptcy judges.  28 U.S.C. § 144 is applicable to proceedings

                                4

in the district court, not the bankruptcy court

28 U.S.C. § 455(a) requires a bankruptcy judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned. "[W]hat matters [here] is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994); see also 28 U.S.C. § 455(a). This is an objective test, requiring a consideration of whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983). Although not required or necessary, knowledge obtained from extra-judicial sources is "a significant [and often determinative factor] . . . in recusal jurisprudence." Liteky v. United States, 510 U.S. 540, 554-55 (1994).

The judge also shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Judges are obligated to perform their duties fairly, impartially and diligently. See ABA CJC, Canon 2, Rules 2.2, 2.5. A judge should not display bias or prejudice in a case or a proceeding over which he presides. See 28 U.S.C. § 455(a), (b)(1). Bias or prejudice are generally defined as a judicial predisposition that is wrongful or inappropriate and that goes beyond what is normal and acceptable. Liteky v. United States, 510 U.S. 540, 552 (1994).

Adverse rulings, however, cannot in themselves form the appropriate grounds for disqualification. Liteky at 555; Lipari

1  v. U.S. Bancorp N.A., 345 F. App'x 315, 317 (10th Cir. 2009);

2  Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997); U.S.

3  Trustee v. Lebbos (In re Lebbos), 439 B.R. 154, 162 (E.D. Cal.

4  2010), aff'd, 529 F. App'x 854 (9th Cir. 2013).

5

6                                IV

7       There is no basis in fact or in law for recusal in this case

8  and no reasonable person would conclude otherwise.

9       The motions are not supported by any evidence, such as a

10 declaration or an affidavit.  See Local Bankruptcy Rule

11 9014-1(d)(3)(D).  Nonetheless, the court will address the various

12 accusations, many of which rehash arguments previously raised by

13 the debtors and addressed by the court.

14

15      **A**

16      The court has not improperly favored the chapter 11 trustee

17 over the debtors.  Although the court has ruled against the

18 debtors in connection with the appointment of a trustee and the

19 trustee's administration of the estate, this is not due to a bias

20 or prejudice against the debtors or in favor of the trustee.  An

21 adverse ruling against a party does not necessarily mean that the

22 court has a bias or prejudice against the party.  Liteky at 555;

23 Lipari v. U.S. Bancorp N.A., 345 F. App'x 315, 317 (10th Cir.

24 2009); Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997).

25      The debtors filed this chapter 11 bankruptcy case

26 voluntarily, on March 15, 2016.  The estate consisted of

27 substantial commercial debt and assets, including several

28 shopping centers.  Chapter 11 bankruptcy is complex and difficult

                                 6

to navigate, especially for individual debtors without counsel.
Nonetheless, the debtors filed the case without legal counsel.
Mrs. Samuel was (and is still) in federal prison, serving a
sentence for crimes related to a scheme that defrauded federally
insured real estate lenders.  Mr. Samuel represented that he had
executed the bankruptcy petition on her behalf pursuant to a
power of attorney.

From the start, the case was plagued with serious and
substantial issues, largely caused by the debtors.  Dockets 61,
67, 75; see also Dockets 379, 381, 382.

The debtors did not file all schedules and statements when
the case was filed.  When they were filed, there were significant
omissions.  For instance, they did not disclose all their assets
including properties in Hawaii and San Bernardino, California,
and they did not list all their creditors.  It appeared to the
court that the debtors were concealing their bankruptcy filing
from some of their creditors, particularly Brake Masters Holdings
SAC, Inc.

Also, the debtors used rents generated by the various
properties without the court's authorization or the permission of
the creditors secured by those rents, in violation of 11 U.S.C.
363(c)(2).  And, the debtors failed to open debtor in possession
bank accounts.  Dockets 45, 61, 379, 381, 382.

This prompted a secured creditor to move for the conversion
of the case to chapter 7.  While the court was compelled to
remove the debtors from their stewardship of the bankruptcy
estate because of their inability to follow the rules governing
chapter 11 and grasp the urgency and gravity of their failure to

do so, the court concluded that the appointment of a chapter 11 trustee, rather than conversion of a case with an operating business, was in the best interests of the creditors.

The appointment of the trustee prompted the debtors to actively hinder and delay the administration of the estate, seeking multiple times dismissal of the case and removal of the trustee. Their motions to dismiss and to remove the trustee were filed without evidence[1] or proof that they were served, and they were never set for hearing. See, e.g., Dockets 69, 82, 83, 96, 305.

Given Mrs. Samuel's imprisonment, she was and is still unavailable to assist the trustee. Mr. Samuel refused outright to cooperate with the trustee. He refused to provide information about the estate's assets and liabilities, requiring the trustee to launch his own investigation into the debtors' assets and the identity of creditors. See, e.g., Docket 203 (outlining some of the trustee's efforts to ascertain the identity of creditors).

On one hand, Mr. Samuel complained that the trustee was mismanaging the estate. On the other hand, he refused to share information with the trustee about the estate's assets and liabilities in violation of his duties under 11 U.S.C. § 521(a)(3).

Mr. Samuel regularly appeared at court hearings. His presentations generally consisted of accusations of improper

---

[1] The only exception of which the court is aware is an "affidavit" Hoda Samuel filed several times, on January 3, January 9, and February 3, 2017. The affidavit was not notarized and was not linked to any matter set for hearing before the court. Dockets 447, 451, 654.

conduct, yelling at whomever he disagreed with, and were always
without any basis in fact. Mr. Samuel's threatening demeanor and
outbursts at times required the court to summon security
personnel into the courtroom to maintain order.

The debtors attempted to retain an attorney, Edward Smith,
in order to prosecute a motion to reinstate them as debtors in
possession. However, just before the hearing on a motion to
approve his employment, Mr. Smith declined to go forward because
the debtors had not given him the records he needed to prosecute
a motion to reinstate them as debtors in possession. Docket 78 &
137.

On August 25, 2016, the court approved the substitution of
Richard Jare in the place of Edward Smith, as counsel for Mr.
Samuel only. Docket 234.

At that point, because Mr. Samuel was represented by
counsel, the court required Mr. Jare to argue on behalf of Mr.
Samuel at nonevidentiary hearings. Nonetheless, on the occasions
when Mr. Samuel wished to interject himself at hearings, the
court offered to give time to Mr. Samuel to confer with Mr. Jare
so he could hear Mr. Samuel's concerns and then supplement his
argument on Mr. Samuel's behalf. This did not stop Mr. Samuel's
frequent outbursts.

The trustee moved forward with the marketing of the
properties. Just as the trustee found buyers to sell the
properties, Mr. Samuel offered to refinance the shopping centers.
However, he had no proposed loan in hand. Mr. Samuel's offer was
a "letter of intent" from a loan broker, subject to
"underwriting, appraisal review, and quality control standards."

9

1  Dockets 475, 495, 511.  The loan broker even refused to disclose
2  the proposed lender.  Dockets 478, 489, 500, 516.  Mr. Samuel, in
3  other words, sought to prevent the sales while he attempted to
4  find financing.

5      The trustee rejected Mr. Samuel's refinance offer for
6  several reasons.  The trustee himself had considered refinancing
7  the properties prior to marketing them for sale, without finding
8  a way to do it.  Mr. Samuel's refinance offer brought nothing new
9  to the option.  Mr. Samuel had not secured a loan.  He had found
10 a loan broker to look for a willing lender.

11     Also, the properties were in substantial disrepair and had
12 numerous deferred maintenance issues.  The estate had no cash on
13 hand to adequately address these issues.  Mr. Samuel's
14 appraisals, upon which the refinance would be based, did not
15 appear to take into account the costs to correct the properties'
16 degraded existing condition.  See Dockets 476, 480, 490, 491,
17 493, 496, 498, 512, 514.  And, in their existing condition, the
18 rental income generated by the properties was insufficient to
19 support a refinance.

20     Moreover, the trustee did not file the first sale motion
21 until December 23, 2016, approximately seven months after his
22 appointment.  When the court began considering the sales, then,
23 the debtors already had ample time to seek a refinance or propose
24 some other reorganization.  Dockets 61, 409, 417, 425, 599, 607,
25 659.

26     Therefore, the court denied Mr. Samuel's request to delay
27 the sales.  Dockets 599, 607, 659.
28 ///

The debtors' other objections to the sales also were without
merit.  The court was unconvinced by Mr. Samuel's challenges to
the purchase prices, values of the properties, marketing of the
properties, the qualifications of the trustee's real estate
broker, or the broker's representation of both the seller and
buyer in the transactions.  See Dockets 599, 607, 659.

The properties had been marketed on the open market for
several months.  The trustee submitted the highest and best
offers received for the properties.  Overbids were presented for
the properties at the hearings on the sale motions.  Two of the
shopping centers received six offers each and one shopping center
received nine offers.  Dockets 599, 607, 659.

Mr. Samuel's appraisals of the properties were not
persuasive because his appraiser relied, not on their actual
income, but on potential income assuming the properties were
rehabilitated and fully leased.  The appraisals also failed to
disclose the assumed income streams upon which they relied.
Dockets 599, 607, 659; Dockets 480, 493, 498, 514; Dockets 476 &
490 & 491 & 496 & 512, each at 17, 28, 63, 74, 109, 120.

The properties were in substantial disrepair and there were
many deferred maintenance issues.  The estate did not have cash
to adequately repair and improve the properties.  Dockets 599,
607, 659.  Due to their poor condition, the trustee decided that
liquidation in their existing condition was the best course of
action.  The court did not disagree.  Dockets 599, 607, 659.

The debtors offered no basis for questioning the
qualifications of the estate's real estate broker.  Its
employment had been approved and qualifications established well

before the sales.  The debtors had not objected to those
qualifications when the broker's employment was approved.  The
court also determined that the broker's representation of the
estate and the buyers was in the best interest of the estate
inasmuch as each offer was highest and best among multiple
offers.  Two of the shopping centers received six offers each and
one shopping center received nine offers.  Dockets 599, 607, 659.

Around the time of the sales, Mrs. Samuel sought dismissal
of the case as to herself.[2]  See Dockets 450 & 471.  For that
reason, the court considered the impact of such a dismissal on
the trustee's ability to sell the properties.  It concluded that
even if she were not a debtor, because the properties were the
community property of the debtors, the trustee would be able to
sell the interests of both Mr. and Mrs. Samuel.  See 11 U.S.C. §
541(a))(2).

Community property is liable for the debts of both spouses
incurred during the course of the marriage.  See Cal. Fam. Code §
910.  The result is no different in bankruptcy.  Even when only
one spouse is a debtor in a bankruptcy case, the community
property interests of both spouses becomes property of the
bankruptcy estate and may be used to pay community claims.  See
11 U.S.C. §§ 541(a)(2), 726(c) & 1129(a)(7)(A)(ii); Dockets 599,
607, 659.

The evidence indicated that three of the shopping center
properties were community property.  See Dockets 599, 607, 659.

_____

[2] At the same time, for approximately one and one-half
months, Mrs. Samuel retained an attorney, Patricia Miller, to
represent her.  See Dockets 471 & 713.

The fourth shopping center was owned by a limited liability company, which the trustee was later able to substantively consolidate with the debtors' bankruptcy estate.  See Dockets 765 & 995.

Mrs. Samuel's community property interest in the three shopping centers and the limited liability company would be property of the bankruptcy estate even if she were not a debtor. While the judgment obtained by the United States is against Mrs. Samuel only, it was entered in July 2014 when Mr. and Mrs. Samuel were married and is based on Mrs. Samuel's criminal misconduct during the marriage.  It was a community claim.

Hence, even if Mrs. Samuel were not a debtor in this case, her interests in the properties were property of the bankruptcy estate which the trustee could sell and then use the proceeds to satisfy the community claim held by the United States.  See Dockets 599, 607, 659.

The court approved in January 2018 the sale of the fourth shopping center, which had been brought into the estate as a result of substantive consolidation with the debtors' limited liability company.  Docket 995.  Mr. Samuel's objections to that sale mirrored those raised in connection with the sales of the other shopping centers — insufficient marketing, sale for less than fair market value, the property could be developed for some other use.  The court rejected the objections.  The property had been adequately marketed since approximately April 2017, Mr. Samuel's appraisal of the property was based on assumptions not based in reality, and the estate had no resources to redevelop the property.  Docket 995.

13

1    Therefore, any reasonable consideration of the record

2  indicates that the court had ample cause to appoint a trustee and

3  authorize the sales when requested by the trustee.  The court

4  carefully considered the debtors' many objections but disagreed

5  with them for reasons laid out in detailed and comprehensive

6  written rulings.  There was no bias or prejudice by the court,

7  personal or otherwise, against the debtors or in favor of the

8  trustee or anyone else.

9

10    **B**

11    The debtors allege that there are connections between Judge

12  McManus and the trustee's law firm, "the parties," and the buyers

13  of the properties requiring his recusal.  Docket 1121 at 3.  The

14  court assumes "the parties" refers to the trustee.

15    Judge McManus last practiced law in 1993 while at

16  Diepenbrock, Wulff, Plant & Hannegan.  He was appointed to the

17  bankruptcy bench on January 11, 1994.  The Diepenbrock firm

18  dissolved in the late 1990s.

19    One of the members in the Diepenbrock firm, Steven

20  Felderstein, and two of its associates, Thomas Willoughby and

21  Paul Pascuzzi, (none of whom have appeared in this case) are

22  members of the law firm now representing the trustee,

23  Felderstein, Fitzgerald, Willoughby & Pascuzzi.  Judge McManus

24  has no professional or business connection to this firm other

25  than his former membership in the Diepenbrock firm.

26    A bankruptcy judge's impartiality cannot reasonably be

27  questioned based on a former professional association that ended

28  in all respects approximately 24 years ago.  See Code of Conduct

14

for United States Judges, Canon 3(C).

    The court approved four sales of commercial properties, three in January and February 2017 and one in January 2018. Multiple buyers and bidders were involved in these sales. None of the buyers were identified at the time of the sales as having any connection to the court or the trustee or counsel for the trustee. The court is aware of no business, social, or other connections.

**C**

    The court has already addressed at length Mrs. Samuel's motion to dismiss the case in its February 13, 2017 ruling. Docket 692 at 1-3. It is repeated here.

>     Mrs. Samuel's contention that her failure to obtain pre-petition credit counseling as required by 11 U.S.C. § 109(h) warrants dismissal lacks merit. Credit counseling is not a jurisdictional requirement. It is rather a question of individual eligibility that is subject to both waiver and estoppel. <u>Mendez v. Salven (In re Mendez)</u>, 367 B.R. 109, 115-17 (B.A.P. 9th Cir. 2007). Mrs. Samuel waived her right to assert the lack of pre-petition credit counseling as reason for dismissal of the case. She, along with her spouse, filed this case on March 15, 2016, approximately one year ago. For nearly 10 months, Mrs. Samuel did nothing to assert her lack of pre-petition credit counseling. Only after the trustee rejected Mr. Samuel's offer to refinance the shopping center properties and filed motions to sell those properties, did Mrs. Samuel raise eligibility under section 109(h). Docket 450.
>     Mrs. Samuel also attempts to justify dismissal by her failure to sign the bankruptcy petition, schedules, and statements. As admitted by Mrs. Samuel, however, Mr. Samuel filed this bankruptcy case on his and her behalf pursuant to a power of attorney given to him by Mrs. Samuel. Mr. Samuel also told the court that he had filed this case on Mrs. Samuel's behalf pursuant to her power of attorney. Dockets 82 at 1, 450, 581.
>     When the court commented during a hearing that, despite the power of attorney, Mrs. Samuel needed to sign the schedules, the court was pointing out only

that Mr. Samuel could not, as her attorney in fact, testify on her behalf or act as her attorney at law. He could not attest for Mrs. Samuel as to the accuracy of the schedules. Nor could Mr. Samuel act as her attorney at law, as opposed to her attorney in fact.

Mrs. Samuel's failure to sign the schedules does not change the fact that Mr. Samuel filed the voluntary bankruptcy petition on Mrs. Samuel's behalf, with her consent and permission, pursuant to the power of attorney. Dockets 1 & 63. Mrs. Samuel's later refusal to sign the schedules, in an effort to trigger a dismissal of the case, could be cause for dismissal but dismissal was not mandatory. See 11 U.S.C. § 1112(b)(4)(F). Indeed, Fed. R. Bankr. P. 1007(k), permits the court to authorize someone else to file schedules and statements when a debtor fails to do so. A dismissal is not the necessary result from a debtor's failure to file these documents. And, even if there is cause for dismissal, the court is required to dismiss, convert the case to chapter 7, or appoint a trustee, whichever is in the best interests of all creditors and the estate. See 11 U.S.C. § 1112(b)(1). The court opted, for many reasons, to appoint a trustee. See Docket 61, Civil Minutes including the courts findings of fact and conclusions of law.

She has also waived any challenge to Mr. Samuel's filing of this case on her behalf under the power of attorney.

A power of attorney may be used to file bankruptcy on behalf of someone else. United States v. Spurlin, 664 F.3d 954, 959 (5th Cir. 2011); In re Ballard, Case No. I-87-00718, 1987 WL 191320 (Bankr. N.D. Cal. April 30, 1987) (permitting a wife to sign, under a power of attorney, a joint bankruptcy petition for her husband, who was serving in the military). And, while it would have been good form for Mr. Samuel to attach the power of attorney to the petition when he signed on Mrs. Samuel's behalf, this was not mandatory. See Fed. R. Bankr. P. 9010(a).

After the court indicated on May 2, 2016 that it was appointing a chapter 11 trustee to administer the estate, Mr. Samuel filed on May 16, 2016, a motion to dismiss the case, citing Mrs. Samuel's unwillingness to sign the schedules. Dockets 61 & 82. The dismissal motion states that "Hoda Samuel has advised her husband that she no longer wishes to proceed with the bankruptcy." Docket 82 at 2 (Emphasis added).

In other words, when the case was filed, she was willing to proceed with the bankruptcy. She had no issue with Mr. Samuel's use of the power of attorney to file this case on her behalf. But, when it looked as if the debtors were about to lose control over the estate because of the appointment of a trustee, she no longer wished to proceed with the bankruptcy. Unfortunately for her, once the case was filed, it

could not be dismissed without satisfying 11 U.S.C. §
1112(b)(1). Rather than demonstrating that dismissal
was in the best interest of creditors and the estate,
Mrs. Samuel attempted to obtain dismissal by pointing
to defects that were within the control of herself and
her husband.

As she did with her eligibility under 11 U.S.C. §
109(h), Mrs. Samuel did not contest Mr. Samuel's
authority to file this case pursuant to the power of
attorney until the trustee filed the motions to sell
the shopping centers, on December 23, 2016. Prior to
that, Mrs. Samuel participated in this case with Mr.
Samuel, without objecting to his exercise of authority
under the power of attorney.

For instance, Mr. Samuel filed motions to dismiss
on his and her behalf, on May 16, 2016. Dockets 82 &
83. Mrs. Samuel and Mr. Samuel also retained an
attorney — Edward Smith — together. Docket 78. She
could not have personally retained Mr. Smith as her
counsel because she has been and is incarcerated in
Texas. The application to employ Mr. Smith as their
counsel is executed "Aiad Samuel, individually and on
behalf of Hoda Samuel through durable power of
attorney." Docket 78 at 7.

On May 25, 2016, Mrs. Samuel even filed her own
change of address request. Docket 97.

Mrs. Samuel also did nothing to revoke Mr.
Samuel's power of attorney prior to the December 23,
2016 filing of the motions to sell. Nor did she file
her own motion to dismiss the case prior to the sale
motions. Her first motion to dismiss was not filed
until January 9, 2017. Docket 450.

Mrs. Samuel has waived or is estopped to assert
any argument based on her failure to sign documents,
obtain credit counseling, or be examined at a meeting
of creditors, as a basis for the dismissal of this
bankruptcy case. It was filed with her consent by her
husband and dismissal is unwarranted under section
1112(b)(1).

Mrs. Samuel has admitted she executed a power of attorney

giving Mr. Samuel authority to file this case on her behalf, and

further admitted that she consented to the filing of this case.

On February 2, 2017, just before the above ruling was

prepared, Mrs. Samuel filed a pleading titled "Judicial Notice-

Power of Attorney is Provoked [*sic*]." In it, she acknowledges a

"Power of Attorney she had given previously to Aiad Samuel."

Docket 630.

1    On August 21, 2017, Mrs. Samuel filed a reply to the
2  trustee's response to her motion to discharge her attorneys
3  (Docket 853), where she unequivocally states that "[she] advised
4  the court via affidavit in December on [*sic*] 2016 that she had
5  consented to the filing of the Bankruptcy Petition."  Docket 893
6  at 2; Docket 894 at 2; Docket 895 at 2.

7    Accordingly, this case was filed with Mrs. Samuel's
8  knowledge, consent, authorization.  Her failure to obtain credit
9  counseling or sign documents did not require dismissal of the
10 case, either entirely or as to Mrs. Samuel only.

11

12    **D**

13    The court has not prevented Mrs. Samuel from participating
14 in this case by not retaining an attorney for her.  Mrs. Samuel
15 was and is free to hire an attorney, just as she did when she
16 briefly retained Patricia Miller, and just as her husband did.
17 She does not need the court's permission to hire one.  To the
18 extent she wants a court-appointed attorney (that is, one paid
19 for by the court), the court addressed her request on February
20 13, 2017.  Docket 629, 668, 694, 698.  The court held:

21        The court does not have the authority or means to
   appoint an attorney for Mrs. Samuel.  In bankruptcy
22 cases, there is no right to counsel such as it exists
   in criminal cases.  Nothing entitles Mrs. Samuel to an
23 attorney, just because she is unable to afford one.
   Many debtors seeking bankruptcy relief are unable to
24 afford an attorney.  This does not qualify them for
   free legal representation.
25        Mrs. Samuel is not a debtor-in-possession.  When
   the court appointed a trustee, the debtors were removed
26 as administrators of the estate.  Estate funds then are
   not available to fund Mrs. Samuel's legal
27 representation.

28 Docket 694.

**E**

The court has not denied the debtors the opportunity to amend their schedules and statements.  Fed. R. Bankr. P. 1009(a) permits a debtor to amend  schedules and statements "as a matter of course at any time."  The debtors have never needed the court's permission to make amendments.  When the case was filed and various parties apprised the court that the debtors had not made full and fair disclosures in their schedules and statements concerning their assets and liabilities, the court urged Mr. Samuel to amend the schedules and statements and correct any omissions and inaccuracies.

**F**

The court has not ignored pleadings filed by Mrs. Samuel. The court is unaware of pleadings that have been ignored.  Nor has she identified any such pleadings in her motion.

A review of the docket reveals that most (perhaps all) motions filed by both debtors without the assistance of counsel were not set for hearing as required by Local Bankruptcy Rule 9014-1(f) and were not served on any parties in interest (or at least there was no certificate of service demonstrating service). Because the court requires parties to set their own motions for hearing, it might be possible to overlook a motion that was not set for hearing.  However, the court believes that it dismissed these motions without prejudice because they had not been served and set for hearing, or it either set them for hearing or deemed them to be a response to a motion filed by another party and dealt with them on their merit.  See, e.g., Part H below

1 discussing the motions to remove the trustee.

2

3    **G**

4    The court does not lack jurisdiction over Mrs. Samuel.

5    She and her husband filed this case voluntarily.

6 "*Bankruptcy judges may hear and determine all cases under title*

7 *11 and all core proceedings arising under title 11, or arising in*

8 *a case under title 11, referred under subsection (a) of this*

9 *section, and may enter appropriate orders and judgments, subject*

10 *to review under section 158 of this title.*"  28 U.S.C. §

11 157(b)(1) (defining the contours of the court's subject matter

12 jurisdiction).

13    To the extent she is arguing that the court lacks personal

14 jurisdiction over her because she was not served with notices and

15 pleadings, Mrs Samuel is incorrect.  She has been served with all

16 notices and documents required to be served on the debtors.

17 Until May 2016, Mrs. Samuel was served at her address in Elk

18 Grove, California, which was the address given to the court in

19 the petition.  Docket 1; see, e.g., Dockets 51, 92.

20    In May 2016, she filed a change of address request, changing

21 her address to the prison facility in Fort Worth, Texas, where

22 she has been incarcerated since prior to the filing of the case.

23 Docket 97.  Since the change of address, Mrs. Samuel has been

24 served with all notices and documents at the address in Texas.

25 See, e.g., Dockets 105, 119, 175, 187, 192, 196, 246, 253, 259,

26 269, 276, 290, 297, 301, 332, 335, 345, 346, 354, 363, 371, 373,

27 375, 393, 408, 433, 434, 435, 436, 437, 438, 442, 446, 456, 464,

28 574, 577, 578, 579, 580, 598, 612, 616, 618, 620, 631, 632, 638,

671, 672, 752, 758, 760, 762, 764, 770, 777, 778, 785, 793, 803, 811, 824, 830, 849, 859, 876, 909, 914, 923, 955, 960, 962, 970, 972.

Mrs. Samuel does not deny this. Nor does she identify any pleadings that were not served or were improperly served on her. While there may be an issue with her receipt of mail at the prison, that is an issue for the prison's authorities.

Finally, despite her assertion to the contrary, Mrs. Samuel was given the required notice of the August 6 hearing on plan confirmation. The order approving the disclosure statement and setting the August 6 hearing was entered on June 28. Docket 1116. There was also a separate notice of the August 6 confirmation hearing, filed on June 29. Docket 1118. The order and notice were served on all parties in interest, including Mrs. Samuel at her Fort Worth, Texas address, on June 29. Docket 1119 at 1 & 5. This service complied with Fed. R. Bankr. P. 2002(b). That is, Mrs. Samuel received more than the required 28 days of notice of both the deadline for filing objections to plan confirmation and the confirmation hearing. Dockets 1116 & 1118.


**H**

The court has not denied Mr. Samuel fair and impartial hearings on the trustee's alleged failure to reverse the $200,000 garnishment by the United States or on his motions to remove the trustee.

First, the court is unaware of any motion, complaint, or objection by either debtor objecting to the claim of the United States, the criminal restitution order underlying the claim, or

orders regarding its enforcement.  Its claim has been deemed
allowed.  See 11 U.S.C. § 502(a).

Second, the court does not understand the argument that the
trustee should have filed a motion, complaint, or objection
concerning the claim of the United States, the criminal
restitution order underlying the claim, or orders regarding its
enforcement, or the argument that the trustee should recover the
$200,000 allegedly seized before the bankruptcy was filed.

According to the United States' proof of claim, it asserts a
claim based on a criminal conviction originally entered against
Mrs. Samuel on August 15, 2013 and amended July 3, 2014.  That
judgment assessed an approximate $3.2 million restitution
judgment against Mrs. Samuel.  The conviction and restitution
judgment were affirmed by the Ninth Circuit Court of Appeals.

Before this bankruptcy case was filed, the United States
began to enforce the restitution judgment.  It recorded the
judgment as a judicial lien in Yolo and Sacramento counties.  It
also sought writs of garnishment to seize accounts and deposits
belonging to both debtors.  The alleged garnishment of $200,000
and other attempts to enforce those writs appear to have
precipitated the filing of the bankruptcy.  See Docket 57.

While the record is less than clear, Mr. Samuel apparently
believes that the restitution judgment cannot be enforced against
his interests in the various real properties and the accounts and
deposits targeted by the writs of garnishment.  The restitution
judgment names only Mrs. Samuel.  Therefore, he believes his
interests in property are not subject to the restitution
judgment.

However, the restitution judgment was entered against Mrs.
Samuel while she was married to Mr. Samuel.  California law
provides that community property is liable for the payment of "a
debt incurred by either spouse before or during marriage . . .
regardless of whether one or both spouses are parties to the debt
or a judgment for the debt."  See Cal. Family Code 910(a).

All property in the bankruptcy estate was acquired by Mr.
and Mrs. Samuel while they were married.  Under California law
". . . all property, real or personal, wherever situated,
acquired by a married person during marriage while domiciled in
this state is community property."  Cal. Family Code § 760.
Unless it can be established that property acquired during
marriage was purchased with or is traceable to separate property,
the property is presumptively community property.  See Valli v.
Valli (In re Marriage of Valli, 58 Cal. 4th 1396, 1400 (2014);
Brace v. Speier (In re Brace), 566 B.R. 13, 19-20 (BAP 9th Cir.
2017).

Absent some showing by the debtors that the restitution
judgment is not a community debt or that property in the
bankruptcy estate is not community property, it is difficult to
understand why the trustee should object to the United States'
claim or attempt to claw back any pre-bankruptcy garnishment.  No
such showing has been made or offered to this court or the
trustee.

Apparently the failure of the trustee to challenge the
United States' claim, his assent to its payment from the proceeds
of the sale of real properties, and his failure to recover the
$200,000 garnishment are among the reasons the debtors wish to

1   remove the trustee.

2       Mr. Samuel filed three motions to remove the trustee.   The
3   first one, filed on June 14, 2016, was not set for hearing,
4   lacked any evidence, and was without proof that it had been
5   served on anyone.   Docket 120.   The court denied the motion
6   without prejudice, noting its deficiencies.   Docket 121.

7       Mr. Samuel filed a second motion to remove the trustee on
8   August 2, 2016, with the same deficiencies.   Docket 204.
9   Although Mr. Samuel had attached some documents to the motion,
10  there was no declaration or affidavit executed under the penalty
11  of perjury establishing the factual assertions in the motion and
12  authenticating the attachments.   The court nevertheless prepared
13  an order setting a hearing on the motion.   Docket 206.   The
14  trustee and the senior mortgagee on the debtors' West Sacramento
15  shopping center filed oppositions to the motion.   Dockets 226 &
16  229.   At the hearing, at the request of Mr. Samuel, the hearing
17  on the motion was dropped from calendar subject to being reset on
18  the conditions that evidence was filed in support of the motion
19  and the motion was set for hearing on notice to all parties.   See
20  Docket 260.

21      Mr. Samuel never reset the motion for hearing.   Instead, he
22  filed another motion to remove the trustee about 10 months later,
23  on July 5, 2017.   It had the same deficiencies.   Docket 841.   It
24  was unsupported by evidence, was not set for a hearing, and there
25  was no certificate of service.   See Dockets 841 & 842.   Unlike
26  the earlier motions, however, this one was filed at a time when
27  Mr. Samuel was represented by attorney Richard Jare.   His
28  attorney did not serve the new motion and set it for a hearing.

1    Thus, the court has not denied a hearing to Mr. Samuel on

2    his motions to remove the trustee.  One was denied without

3    prejudice, the second was dismissed by Mr. Samuel and not reset

4    for a hearing, and the third was filed but never set for a

5    hearing or served by Mr. Samuel or his attorney.

6

7    **I**

8    The remaining reasons for recusal revolve around the claim

9    of the United States.  The debtors assert that Judge McManus

10   wrongly permitted the payment of this claim without investigating

11   the underlying FDIC claim for more than $3 million even though

12   Mrs. Samuel is contesting the judgment.  Further, the debtors

13   maintain that payment of the United States' claim violates a

14   compromise, and that the garnishment order of a U.S. Magistrate

15   Judge enforcing the judgment is illegal, invalid, and

16   unenforceable.

17   First, to the extent the debtors believe the restitution

18   ordered by the district court is wrong, they must address the

19   issue with the district court or in an appeal from its judgment

20   and post-judgment orders.  It is this court's understanding that

21   Mrs. Samuel appealed her criminal conviction and the restitution

22   order, but her appeal was denied.

23   Second, if the United States has compromised its right to

24   collect the restitution, no such compromise has been presented to

25   this court in connection with an objection to the proof of claim

26   filed by the United States.

27   ///

28   Third, the debtors seem to be under the impression that the

bankruptcy court investigates claims filed by creditors before
they are paid.  It does not.  It relies on the parties to a case
to file and prosecute objections if there is a reason to disallow
a claim.  In the absence of an objection, a filed proof of claim,
like the one filed by the United States in this case, is deemed
allowed and may be paid.  See 11 U.S.C. § 502(a).

No party in interest has filed an objection to the United
States' claim.

Fourth, this court has not enforced any writ of garnishment
issued by another court.  This appears to be a reference to the
$200,000 garnishment discussed above.  That garnishment took
place before the bankruptcy case was filed.  To the extent the
debtors are arguing that this court is enforcing the writ because
it has not undone the garnishment, the court has not done so
because no party in interest has filed, served, and successfully
prosecuted the necessary proceeding to reverse the garnishment.
And, given what is in the record, as discussed above, the court
perceives no basis for doing so.

V

The motion for recusal will be denied.  A separate order on
each motion will be entered.

The nub of the debtors' complaint is that the court ruled
against them when it appointed a trustee, denied motions to
dismiss the case and remove the trustee, authorized the trustee
to sell properties and pay the claims of creditors secured by
those properties, including the United States.  The record
demonstrates that the court's decisions have been sound, anchored

1   in both law and fact, and are not the result of bias or prejudice

2   against the debtors or in favor of another.  Viewed objectively,

3   a reasonable person would not conclude otherwise

4       The subject motions filed by the debtors also seek the

5   removal of the chapter 11 trustee.  The court will consider this

6   aspect of the motions at a hearing on August 28, 2018 at 10:00

7   a.m.  Any evidence the debtors wish to file in support of this

8   relief shall be filed and served on the trustee and his attorney

9   by August 13.  The trustee shall file and serve any opposition by

10  August 20.  The debtors may file and serve a reply to any

11  opposition by August 27.

12      The court previously continued the hearing on the

13  confirmation of the trustee's proposed plan to August 20.  Given

14  the hearing on August 28, the confirmation hearing is further

15  continued to August 28.  The court will consider confirmation

16  following its disposition of the motion to remove the trustee, if

17  appropriate.

18  Dated: August 07, 2018            By the Court

19

20

21                                     Michael S. McManus
                                       United States Bankruptcy Judge
22

23

24

25

26

27

28

                                27

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC.

Aiad Samuel
5921 Whalers Cove Ct
Elk Grove CA 95758

Hoda Samuel
FMC Carswell Inmate #19252-097
PO Box 27137
Fort Worth TX 76127

Scott M. Sackett
4030 S Land Park Dr #C
Sacramento CA 95822

Office of the U.S. Trustee
Robert T Matsui United States
Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

Gonzales & Sisto, LLP
855 University Ave
Sacramento CA 95825

Edward A. Smith

Tranzon Asset Strategies
9891 Irvine Center Dr #200
Irvine CA 92618

Cushman & Wakefield of California,
Inc.

Cushman & Wakefield of California,
Inc.
400 Capitol Mall #650
Sacramento CA 95814

Cushman & Wakefield of California,
Inc.
400 Capitol Mall #650
Sacramento CA 95814

JPMorgan Chase Bank, N.A.
Chase Home Finance Milwaukee
Mail Code LA4-5555
700 Kansas Ln
Monroe LA 71203

Bank of America, N.A.
c/o Matthew R. Clark
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego CA 92177-0933

Chase Home Finance Milwaukee
Attn: Correspondence Mail
700 Kansas Lane
Mail Code LA4-5555
Monroe LA 71203

JPMorgan Chase Bank, N.A.
Chase Home Finance Milwaukee
Mail Code LA4-5555
700 Kansas Ln
Monroe LA 71203

Fairview Holdings II, LLC
LeClairRyan, LLP
400 Capitol Mall #1500
Sacramento CA 95814

JPMorgan Chase Bank, National
Association
c/o McCarthy and Holthus, LLP
1770 4th Ave
San Diego CA 92101

The Bank of New York Mellon
Prober & Raphael
20750 Ventura Blvd #100
PO Box 4365
Woodland Hills CA 91364

U.S. Bank NA

JPMorgan Chase Bank, N.A.
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Ln
Monroe LA 71203

JPMorgan Chase Bank, National
Association
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Lane
Monroe LA 71203

JPMorgan Chase Bank, N.A.
c/o Bruce Cornelius
3650 Mt. Diablo Blvd #180
Lafayette CA 94549

Bank of America, N.A.
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Deigo CA 92117-0933

United States Of America
.

JPMorgan Chase Bank, N.A.

JPMorgan Chase Bank, N.A.
c/o Aldridge Pite, LLP
4375 Jutland Dr #200
PO Box 17933
San Diego CA 92177-0933

Tri Counties Bank
Leo J. Graham/Benjamin C.O.
Anderson
Tri Counties Bank Legal Department
PO Box 992570
Redding CA 96099-2570

JPMorgan Chase Bank, N.A.
McCarthy and Holthus, LLP
1770 4th Ave
San Diego CA 92101

The Bank of New York Mellon

Brake Masters Holdings SAC, Inc

US Bank

JPMorgan Chase Bank, N.A.
Chase Home Finance Milwaukee
Mail Code LA4-5555
700 Kansas Ln
Monroe LA 71203

Sackett Corporation

Tracy Hope Davis

Bruce A. Emard
501 I Street, Suite 10-100
Sacramento CA 95814

Cassandra J. Richey
20750 Ventura Blvd #100
PO Box 4365
Woodland Hills CA 91365-4365

Christopher M. McDermott
4375 Jutland Dr #200
PO Box 17933
San Diego CA 92177-0933

Diane V. Weifenbach
5120 E. LaPalma Avenue, Suite 209
Anaheim CA 92807

Edmund Gee
501 I Street #7-500
Sacramento CA 95814

Edward A. Smith
3300 Douglas Blvd., STE 100
Roseville CA 95661

Edward A. Smith
3300 Douglas Blvd., STE 100
Roseville CA 95661

Jarrett S. Osborne-Revis
333 W San Carlos St #620
San Jose CA 95110

Jason E. Rios
400 Capitol Mall, Suite #1750
Sacramento CA 95814

Jeffrey J. Lodge
2500 Tulare St #4401
Fresno CA 93721

Kelly M. Raftery
1770 4th Ave
San Diego CA 92101

Kristin A. Zilberstein
1770 4th Ave
San Diego CA 92101

Kurt A. Didier
501 I St #10-100
Sacramento CA 95814

Leo J. Graham
PO Box 994630
Redding CA 96099-4630

Mark D. Estle
12526 High Bluff Dr #238
San Diego CA 92130

Matthew R. Clark
4375 Jutland Dr #200
PO Box 17933
San Diego CA 92177-0933

Mehrdaud Jafarnia
1770 Fourth Ave
San Diego CA 92101

Michael D. Mandell
3650 Mt Diablo Blvd #180
Lafayette CA 94549

Patricia G. Miller
PO Box 1081
Herrin IL 62948

Richard L. Jare
6440 Carolinda Drive
Granite Bay CA 95746

Robert S. McWhorter
400 Capitol Mall, Suite 1500
Sacramento CA 95814

Wendy L. Benjamin
1127 18th Street
Sacramento CA 95811

Asbury Environmental Services
9302 Garfield Avenue
South Gate CA 90280

Bank of America Kiosk
BofA Corp Payee Number 10212881
3400 Pawtucket Avenue
RI1 530-01-16

Bowinkle s Drive Thru
c o Vannsook Tiv
5821 Dry Creek Road Apt 13
Rio Linda CA 95673

Brake Masters Holdings SAC, Inc.
d/b/a Brake Masters of Sacramento,
Inc.
Benjamin Law Offices
1127 18th Street
Sacramento, CA 95811

California American Water
PO Box 578
Alton IL 62002

Cisco Inc
P O Box 801088
Houston TX 77280

City of Sacramento
Revenue Division
915 I St #1201
Sacramento CA 95814

Cochran County Tax Office
C/O Laura J. Monroe
Perdue, Brandon, Fielder, Collins &
Mott
PO Box 817

County of Sacramento
P.O. BOX 1197
SACRAMENTO, CA 95812-1197

County of San Bernardino
Office of the Tax Collector
268 W Hospitality Lane 1st Fl
San Bernardino CA 92415

Credence Resource Management
LLC
PO Box 2268
Southgate MI 48195-4268

Creekside Diner
950 Oak Lane
Rio Linda CA 95673

Fairview Holdings II, LLC. A
Washington LLC.
Attn: Nels Stemm
119 S. Main Street, Suite 410
Seattle, WA 98104

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento, CA 95812

Hung Tu
10939 Meritage Drive
Rancho Cordova CA 95670

I C Bakery LLC
952 Oak Lane
Rio Linda CA 95673

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank N A
National Payment Services
PO Box 182223
Columbus OH 43218

JPMorgan Chase Bank, N.A
Chase Records Center
Attn: Correspondence Mail
Mail Code LA4-5555

JPMorgan Chase Bank, N.A.
3415 Vision Dr
OH4-7126
Columbus OH 43219

JPMorgan Chase Bank, N.A.
3415 Vision Drive
OH4-7126
Columbus OH 43219

JPMorgan Chase Bank, N.A.
c/o Bruce Cornelius
3650 Mt Diablo Blvd #180
Lafayette CA 94549

JPMorgan Chase Bank, National
Association
Chase Records Center
Attn: Correspondence Mail
Mail Code LA4-5555

Lisa J Jackson JD LLM
Law Offices of Lisa J Jackson JD
LLM
15215 Friends Street
Pacific Palisades CA 90272

Los Angeles County Treasurer and
Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

Mike Brumbaugh
MBI Consulting Group Inc
3300 Sunset Blvd Suite 200
Rocklin CA 95677

Oreilly Automotive Inc
PO Box 9464
Springfield MO 65801-9464

Pacific Property Advisors, Inc.
185 Front St
Ste 207
Danville, CA 94526

Sacramento County Consolidated
Utilitie
9700 Goethe Road Suite C
Sacramento CA 95827

Spandan Patel
dba Wash Factory Coin Laundry
4721 Waterstone Drive
Roseville CA 95747

Taqueria Mi Lindo Apatzingan Inc
928 Oak Lane
Rio Linda CA 95673

The Bank of New York Mellon,
Trustee (see 410)
c/o Specialized Loan Servicing LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, Colorado 80129

The Bank of New York Mellon, as
Trustee (See 410)
c/o Specialized Loan Servicing LLC
8742 Lucent Blvd, STE 300
Highlands Ranch, CO 80129

Tri Counties Bank
Legal Department
Post Office Box 992570
Redding, CA 96099-2570

U.S. Bank, NA
Rushmore Loan MGT Services
PO Box 55004
Irvine CA 92619

United States of America
U.S. Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814

Wendy L. Benjamin
Benjamin Law Offices
1127 18th Street
Sacramento, CA 95811

Yesco
P O Box 11676
Tacoma WA 98411