UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re ) Case No. 16-21585-A-11
)
)
AIAD SAMUEL and HODA SAMUEL, )
)
)
Debtors. )
)
)
_____ )

**MEMORANDUM**

On August 20, 2018, debtor Aiad Samuel filed a motion to recuse Judge McManus. Docket 1159. This is the second such motion filed by Mr. Samuel.

The first motion was filed on July 17, 2017 and was disposed by the court, along with a separate recusal motion by debtor Hoda Samuel, in an August 20 Memorandum. See Dockets 1121, 1122, 1123, 1148.

///

///

///

1

I

While this motion is directed to the chief judge of this court, it is the challenged judge who must decide a recusal motion. See 28 U.S.C. § 455; Schurz Communications, Inc. v. FCC, 982 F.2d 1057, 1059, 1062 (7th Cir. 1992) (chambers opinion) (Circuit Judge Posner considering and denying a request for his disqualification pursuant to section 455); United States v. Dennis, Case No. 2:10-CR-00091-KJD-GWF, 2016 WL 4925915, at *1 (D. Nev., Sept. 14, 2016).

In this case, the recusal motion concerns Judge McManus. Thus, 28 U.S.C. § 455 requires Judge McManus to decide the motion.

Nevertheless, this and the prior motions have been brought to the attention of Chief Judge Ronald Sargis so he may determine for himself whether he is required to adjudicate the issue of Judge McManus' recusal.

II

This motion, except for the several issues addressed below, largely repeats issues raised in the prior recusal motions. Those issues are addressed in the court's earlier Memorandum, which is incorporated here by reference. Docket 1148.

The new issues raised by Mr. Samuel do not show a bias or prejudice against the debtors or in favor of another warranting recusal. Nor do the newly raised issues provide some other basis for disqualification of Judge McManus.

///
///

A

Mr. Samuel complains that the court has not allowed him to discharge attorney Richard Jare and to retain another attorney. This is not true.

Until Mr. Samuel's July 17 prior motion to disqualify the court was filed, no motion had been filed to discharge Mr. Jare as counsel for Mr. Samuel. On page 4 of the July 17 motion, Mr. Samuel asks to discharge Mr. Jare. Docket 1121 at 4. He also makes the request in an objection to the trustee's proposed plan of reorganization. See Docket 1137.

However, until it dealt with the first two recusal motions, the court could not act on any other pending motions in the case. See Dockets 1121, 1122, 1123. That is why the court set an August 28 hearing on the other relief requested in the first two recusal motions and on the confirmation of the plan. The question of Mr. Jare's discharge as attorney would have been taken up at that time.

On August 20, however, the same day Mr. Samuel filed his second recusal motion, Mr. Jare filed a document titled "Attorney Richard Jare's Statement," giving his consent to be discharged as counsel for Mr. Samuel. Docket 1169.

Given Mr. Samuel's demand and Mr. Jare's statement, once the court has ruled on this recusal motion, it will enter an order relieving Mr. Jare of his responsibilities as counsel for Mr. Samuel and substituting Mr. Samuel as his own counsel.

It must also be mentioned that because the debtors were removed as debtors in possession, they have never needed this court's permission to retain attorneys to represent their

interests. Only professionals employed by the bankruptcy estate must have their employment approved. See 11 U.S.C. § 327(a).

Nor do the debtors need this court's permission to discharge an attorney, although it is incumbent on the attorney to file a motion pursuant to Local Bankruptcy Rule 2017-1(e) if the attorney's withdrawal will leave the client without an attorney. This is to protect the client an ensure such things as the return of the client's property and records.

The debtors in this case seem to have appreciated that it is their prerogative to hire and fire attorneys.

For instance, the debtors retained attorney Edward Smith to prosecute a motion to reinstate them as debtors in possession. Mr. Smith declined to go forward with this representation because the debtors did not give him the records he needed to seek their reinstatement. Dockets 78 & 137; Docket 1148 at 9.

Mr. Samuel discharged Mr. Smith and retained Mr. Jare. Docket 234. As to Mrs. Samuel, the court granted Mr. Smith's motion pursuant to Local Bankruptcy Rule 2017-1(e) to be relieved as her counsel. Docket 710.

Mrs. Samuel later retained attorneys Patricia Miller and Lisa Jackson to represent her for short periods of time. See, e.g., Dockets 581, 692, 696, 713, 728, 853, 860, 898.

Finally, even when both debtors were represented by counsel, the court nonetheless considered their many motions and responses to motions filed without the assistance of their attorneys. And, as recently as August 20, at a hearing on the trustee's cash collateral motion, the court permitted Mr. Samuel to present his own opposition because Mr. Jare was not present. See Dockets

1161 & 1166.

**B**

Mr. Samuel complains that the court has deprived him of the financial ability to retain counsel by appointing a trustee to take charge of the bankruptcy estate.

The court appointed a trustee because the debtors used cash collateral without court or creditor permission, failed to disclose all financial information in the bankruptcy schedules and statements, and failed to open a debtor in possession bank account as required by Local Bankruptcy Rule 2015-2(a). See Docket 1148 at 7-8.

While the appointment of the trustee placed the property of the estate in the hands of the trustee, the trustee has not prevented the debtors from using Mr. Samuel's employment income or their substantial retirement accounts (which total approximately $1,895,000 according to amended Schedule C filed January 23, 2018) to retain attorneys or for any other purpose.

And, the record shows that the debtors have not lacked the will or the resources to retain attorneys in this case. As outlined above, the debtors have used several attorneys thus far. Mr. Jare, Mr. Samuel's most recent attorney, also states that Mr. Samuel has the funds to "well afford to hire a different attorney." Docket 1169 at 2. Also, Mr. Samuel has been conferring with other attorneys in the district, such as attorney Mark Wolff. Docket 1169 at 2.

But, even if the appointment of the trustee meant that the debtors could not afford an attorney, the court did not appoint a

trustee in order to prevent the debtors from retaining one. A trustee was appointed because the debtors had shown themselves to be poor stewards of the bankruptcy estate.

**C**

Mr. Samuel complains that the court has denied him the opportunity to amend his bankruptcy schedules.

The obligation to prepare and file bankruptcy schedules and statements, and accurately disclose information in them, has always been on the debtors. See 11 U.S.C. § 521(a). As discussed in the court's August 20 Memorandum, the debtors have never needed permission from the court to amend their schedules and statements in order to fulfill their reporting and disclosure obligations. Docket 1148 at 19; Fed. R. Bankr. P. 1009(a). And, the court has not entered any order preventing the debtors from amending the schedules or statements.

Mr. Samuel notes also that the trustee has not filed amended schedules. Nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure, however, requires the trustee to amend the debtors' bankruptcy schedules or statements. Nor has the court required the trustee to amend the schedules or statements. See Fed. R. Bankr. P. 1007(k) (providing that the court *may* order the trustee to prepare and file schedules).

**D**

Mr. Samuel asserts that the trustee offered $2 million to the debtors to withdraw their objections to "the Trustee's activities."

6

1　　　　This allegation has not previously been made, much less
2　substantiated. The court assumes it will be made in connection
3　with the motion to remove the trustee and it will be dealt with
4　in that context.
5　　　　In the meantime, it is not a basis for recusal of the court.
6
7　　　　**F**
8　　　　Mr. Samuel complains that "[t]here was never an accounting
9　made to the Court as to the suspicious nature of a fire and water
10　damage from one of Petitioner's properties."
11　　　　The court does not recall anything, and it sees nothing in
12　the record, indicating that there was a fire at one of the
13　properties administered by the trustee.
14　　　　There was water damage at the Rio Linda shopping center
15　property caused when the fire suppression sprinkler system was
16　triggered. A sensor failed and water collected in a portion of
17　the property causing significant water damage. The court does
18　not recall that the reason the sprinkler system activated was
19　ever established. Docket 826.
20　　　　The court also does not understand what Mr. Samuel means by
21　an "accounting" of the damage. After the flooding at the Rio
22　Linda shopping center, the trustee filed a motion to authorize a
23　plan to abate, clean up, and repair the damage caused by the
24　water, and to settle the claim with the insurance company. The
25　court granted the motion. Dockets 826, 839, 844.
26　　　　In his motion, the trustee revealed the damage, the amount
27　of available insurance, and the cost of abatement, cleanup,
28　repairs, and rebuilding. In its order, the court approved the

1 | trustee's plan to repair the damage.
2 | In addition, the trustee has been filing operating reports,
3 | reporting the finances of the estate, on a monthly basis, since
4 | his appointment. See, e.g., Dockets 771, 804, 806, 817, 861,
5 | 904, 922.
6 | To the extent Mr. Samuel is complaining about the court's
7 | disposition of the trustee's motion to deal with the water
8 | damage, this is not a basis for recusal. Adverse rulings alone
9 | are not grounds for disqualification of a judge. Liteky v.
10 | United States, 510 U.S. 540, 555 (1994); U.S. Trustee v. Lebbos
11 | (In re Lebbos), 439 B.R. 154, 162 (E.D. Cal. 2010), aff'd, 529 F.
12 | App'x 854 (9th Cir. 2013).
13 | To the extent Mr. Samuel maintains that the trustee is
14 | somehow responsible for the water damage or has not accounted for
15 | insurance proceeds, the court will consider this in connection
16 | with the motion to remove the trustee if raised by Mr. Samuel.
17 |
18 | **G**
19 | Mr. Samuel complains that the court has "disregarded or
20 | ignored the apparent conversion of hundreds of thousands of
21 | dollars in business equipment belonging to the Petitioner that
22 | was acquired by the Trustee, which has never been accounted for."
23 | However, Mr. Samuel does not identify this equipment, where
24 | it was located, and his basis for claiming that it was converted
25 | or acquired by the trustee. Mr. Samuel also says that this was
26 | an "apparent conversion" of the equipment, suggesting he is not
27 | certain that the equipment was actually taken.
28 | ///

    The court notes that the schedules filed by the debtors do not identify hundreds of thousands of dollars of business equipment. Two versions of Schedule A/B were filed. Dockets 31 and 65. They identify $100 of business personal property.

    Nonetheless, the trustee found substantial unscheduled business personal property. Some was sold in connection with the real property in which the personal property was located. See e.g., Dockets 409, 599, 622; 417, 659, 712; 425, 607, 626; 949, 995, 1015. Other personal property was auctioned pursuant to the trustee's motion and this court's order. See Dockets 911, 920, 924.

    As Mr. Samuel has never presented the court with specific information concerning an alleged conversion or acquisition by the trustee of personal property belonging to the estate, the court has not failed to act. To the extent Mr. Samuel is complaining about the sales authorized by the court, appeal not recusal is the appropriate remedy.

### III

    Mr. Samuel's second motion for recusal will be denied. A separate order will be entered.

    Mr. Samuel is and has been free to retain whatever legal counsel he selects.

    His other complaints continue center on the appointment of the trustee and the trustee's administration of the bankruptcy estate, including the sales proposed by the trustee and approved by the court.

///

The record demonstrates that the court's decisions have been sound, anchored in both law and fact, and are not the result of bias or prejudice against the debtors or in favor of another. Viewed objectively, a reasonable person would not conclude otherwise and the court discerns no basis for recusal.

Dated: 23 August 2018

By the Court

Michael S. McManus, Judge
United States Bankruptcy Court